IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE


CIVIL ACTION NO. 3:12cv0564 (WOB-HBG)

DONNA FRAZIER, Individually and
As Personal Representative of the
Estate of JOSEPH FRAZIER					PLAINTIFF

VS.			MEMORANDUM OPINION AND ORDER

SIDNEY JACKSON, ET AL.					DEFENDANTS


	This matter is before the Court on all pending motions (Docs. 12, 24, 36, 40, 53, and 60).

	The Court heard telephonic oral argument on all pending motions on Friday, June 28, 2013.  After oral argument, the Court took the motions under advisement and allowed the parties to file supplemental briefs on the issues discussed at the hearing.  *See* Doc. 64.

	Having reviewed the written filings and heard from the parties, and being otherwise sufficiently advised, the Court hereby finds, for the reasons that follow, that the Plaintiffs' legal malpractice action is barred by Tenn. Code Ann. § 28-3-104(a)(2).

*Factual and Procedural Background*

This legal malpractice action, filed by Donna Frazier[1] individually and the Frazier Estate ("the Plaintiffs"), arises out of the representation of Joseph Frazier and the Frazier Estate by the law firms Beasley, Allen, Crow, Methvin, Portis, & Miles, PLLC ("Beasley Allen"); Jackson, Foster, & Richardson, LLC ("Jackson Foster"); and Michael Padway and Associates ("Padway"). The Plaintiffs also assert claims against Attorneys Kevin Graham, Sidney Jackson, and Michael Padway individually. *See* Doc. 28 at ¶¶ 5, 6, 9. Unless referred to individually, all Defendants will be referred to collectively as "the Defendants."

Joseph Frazier contracted mesothelioma as a result of occupational exposure to asbestos-containing products while working in various capacities, primarily in Illinois, from 1948 to 1972. *Id*. at ¶ 15. Mr. Frazier was diagnosed with the disease in April 2002. *Id*.

From his Tennessee home in June 2002, Mr. Frazier saw an advertisement regarding mesothelioma claims run by Defendant Padway. *Id*. at ¶ 17. Mr. Frazier contacted the phone number on the advertisement, and Kevin Graham – an attorney with Defendant

---

[1]Donna Frazier is the widow of Joseph Frazier and the personal representative of her late husband's estate. *See* Doc. 68 at ¶ 2.

law firm Jackson Foster – responded by traveling to Mr. Frazier's home in Tennessee.[2]  *Id*. at ¶ 18.

During this meeting, Mr. Frazier signed an attorney-fee agreement with Jackson Foster, Beasley Allen, and Padway.[3]  *Id*. at ¶ 19.  Subsequently, in September 2002, Graham filed Mr. Frazier's action along with other asbestos-disease plaintiffs in a consolidated action in Mississippi.  *Id*. at ¶ 20.

On January 20, 2004, while his case was pending in Mississippi, Mr. Frazier died from mesothelioma.  *Id*. at ¶ 21.  Ultimately, the Mississippi Court dismissed his claim without prejudice on improper venue grounds in August 2005.  *Id*. at ¶ 20.

Throughout the Defendants' representation of Mr. Frazier and his estate, the Defendants negotiated settlements with the

---

[2] The majority of the correspondence that has been attached to various pleadings and motions in this case indicates that Kevin Graham was the main point-of-contact for Joseph & Donna Frazier throughout the Defendants' representation of Mr. Frazier and his estate.

[3] Defendant Padway asserts in its motion to strike/motion for summary judgment that "[t]he agreement was not signed by, for, or on behalf of Defendant Padway." *See* Doc. 25 at p. 2.  However, the fee agreement signed by Mr. Frazier clearly listed Michael Padway & Associates as counsel to represent Mr. Frazier. *See* Doc. 28-2.  Additionally, the Plaintiffs filed a motion to supplement their response to Padway's motion to strike/motion for summary judgment in which the Plaintiffs proffered a telefax from Beasley Allen to Padway which states, in part, "We will ask the clients to sign a joint fee contract that meets your approval with all our names on it." *See* Doc. 60-1.  In response to the Plaintiffs' motion for leave, Padway asserts that the Plaintiffs received this document on April 8, 2013, but did not move to supplement until May 6, 2013. *See* Doc. 62 at p. 2.  While not the speediest of requests, the Plaintiffs' proffered document is highly probative of this minor issue, and, thus, the Plaintiffs' motion (Doc. 62) will be granted.  With the telefax correspondence and the fee agreement clearly naming Padway as one of Mr. Frazier's counsel, the Plaintiffs have offered enough evidence to conclude that Padway was a party to the fee agreement in question.

Johns-Manville Trust; CSR; Crown, Cork, & Seal; and CertainTeed. *Id*. at ¶¶ 37, 38, 40. Kevin Graham notified the Plaintiffs of the CertainTeed settlement on November 5, 2003; the Crown Cork & Seal settlement on July 7, 2004; the CSR settlement on April 7, 2006; and the Johns-Manville settlement on November 3, 2009. *See* Doc. 29-4 at Exs. B, C, D, E.

The Plaintiffs also assert that they were advised of potential settlements with General Electric, Flintkote, Georgia Pacific, and U.S. Steel, but they never received any proceeds of these settlements. *Id*. at ¶¶ 42, 43, 45.

After Mr. Frazier's claim was dismissed in Mississippi, Defendant Graham re-filed Mr. Frazier's action (now a wrongful death action) in August 2006 in an already-pending consolidated action in Alabama titled *Moman, et al. v. Ace Hardware Corp., et al. Id*. at ¶ 22.

On September 20, 2009, the Frazier Estate, via letter, terminated Beasley Allen as its counsel concerning the Frazier Estate's wrongful death claim. *See* Doc. 12-1, Ex. 1. In October 2009, the Frazier Estate terminated Kevin Graham's representation, which effectively also terminated Jackson Foster's representation. *See* Doc. 12-2, Ex. A.

On November 10, 2009, Scott Hendler, the Plaintiffs' new counsel and their counsel in this litigation, sent a letter to Graham requesting all documents associated with the settlements

obtained by Defendants; requesting any documents relating to Defendants' association with other attorneys; and outlining concerns about Graham's calculation of the Johns-Manville settlement proceeds. *See* Doc. 12-6.

In December 2009, Attorney Hendler entered an appearance on behalf of the Frazier Estate in the still-pending Alabama action. *See* Doc. 12-5.

On August 6, 2010, the Frazier Estate filed a motion in the *Moman* action to sever its claims from those of the other *Moman* plaintiffs. *See* Doc. 12-7. That motion was granted on January 3, 2011. *See* Doc. 12-8.

On June 2, 2011, the Frazier Estate moved to have its claim dismissed on forum non conveniens grounds, arguing that Illinois rather than Alabama would be the proper forum for the Frazier Estate's claims. *See* Doc. 12-10. On June 30, 2011, the asbestos defendants filed a response to the motion. *See* Doc. 12-11. Ultimately, the Frazier Estate withdrew its forum non conveniens motion.

On October 11, 2011, Attorney Hendler sent the following email to Defendant Graham:

> The defendants are now raising the issue of limitations in the Frazier case based on the date of death and the first date of filing in Alabama. None seemed to be aware of the previous filing in Mississippi or his deposition. It was my understanding that you filed in Alabama under Miss. Code sec. 15-1-9 [sic] after being dismissed from

> Mississippi which you believed provide [sic] a tolling period of sorts to re-file the case in another appropriate jurisdiction. That code provision is attached but I don't fully understand the legal analysis that allows for the period of time to re-file the case in another State such as Alabama. Is there Alabama law that recognizes the Mississippi Savings Statute that your [sic] relied on?

*See* Doc. 67-2.

On October 26, 2011, Plaintiffs filed an Amended Complaint in the *Moman* action. *See* Doc. 12-12. On October 28, 2011, the asbestos defendants filed a motion to dismiss the Frazier Estate's Amended Complaint on statute of limitations grounds. *See* Doc. 12-13.

The asbestos defendants argued that the Frazier Estate was required to file the wrongful death action within two (2) years of Mr. Frazier's death pursuant to Ala. Code § 6-5-410(d) – Alabama's two-year statute of limitations for wrongful death claims. *Id.* Thus, the asbestos defendants argued, the Frazier Estate's failure to file the wrongful death action by January 20, 2006 – the two-year anniversary of Mr. Frazier's death – necessitated dismissal of the wrongful death claim. *Id.*

The Frazier Estate responded on December 1, 2011, arguing that Mississippi's one-year Savings Statute should apply and toll the Alabama statute of limitations. *See* Doc. 12-15. On February 2, 2012, the Alabama Court granted the asbestos

defendants' motion and dismissed the case as time-barred. *See* Doc. 12-16.

Plaintiffs filed this legal malpractice action against the Defendants on October 30, 2012. *See* Doc. 1. Plaintiffs' allegations of malpractice can be summarized as follows:

- Defendants' filing of Mr. Frazier's underlying asbestos litigation in Mississippi rather than Illinois. *See* Doc. 28 at ¶ 53(d).

- Defendants' filing of Mr. Frazier's underlying asbestos litigation in Alabama rather than Illinois. *Id*.

- Defendants' failure to properly investigate Mr. Frazier's claims for the purposes of filing the case in Illinois and failing to file a claim against Owens Illinois. *Id*. at ¶ 53(b), (c), (g).

- Defendants' failure to obtain adequate settlements from the Johns-Manville Trust, CSR, Crown Cork & Seal, and CertainTeed. *Id*. at ¶ 53(n).

- Defendants' misrepresentation of the strength of Mr. Frazier's claim against CertainTeed in order to induce Plaintiffs' to settle their claim against CertainTeed. *Id*. at ¶ 53(e).

- Defendants' conversion of settlement funds from Flintkote, General Electric, Georgia Pacific, and United States Steel. *Id*. at ¶ 53(i), (j), (k), (l), (m), (o).

- Defendants' failure to obtain Plaintiffs' permission to associate other attorneys. *Id*. at ¶ 53(h).

- Defendants' failure to file Plaintiffs' wrongful death claim within the applicable two-year statute of limitations. *Id*. at ¶ 53(a).

Despite the Plaintiffs' various malpractice allegations, they assert that each allegation of malpractice caused a single indivisible injury[4], which did not occur until February 2, 2012 – the date the Alabama State Court dismissed the wrongful death claim on statute of limitations grounds. *See* Doc. 68 at 4, 12.

The Defendants disagree, arguing that the Plaintiffs' legal malpractice action is barred by the applicable statute of limitations. *See* Docs. 12, 25, 66, 67.

*Analysis*

**I. Conflict of Laws**

While the Defendants assert that the Court must engage in a conflict of laws analysis to determine whether Tennessee or Alabama law should apply, "[a] district court, sitting in diversity, must apply the law of the forum state in determining statute of limitations questions." *Swanson v. Wilson*, 423 F.

---

[4] While the Plaintiffs request this Court to analyze their myriad of malpractice allegations as if they caused a single indivisible injury, it must be noted if the Court were to consider the allegations individually, the allegations concerning inadequate or converted settlements and the Defendants' failure to file Mr. Frazier's claim in Illinois would be barred by Tenn. Code Ann. § 28-3-104(a)(2).
    The Plaintiffs' claims of inadequate or converted settlements occurred no later than when Defendant Graham notified the Plaintiffs of the settlements. *See Swett v. Binkley*, 104 S.W.3d 64, 67 (Tenn. Ct. App. 2002) (finding that plaintiff's cause of action for malpractice against defendant accrued on the date plaintiff signed the settlement statement). Additionally, the Plaintiffs' claim regarding failure to file in Illinois accrued no later than when the Mississippi Court dismissed Mr. Frazier's claim on improper venue grounds. *See Cherry v. Williams*, 36 S.W.3d 78, 84 (Tenn. Ct. App. 2000) ("[T]he most easily identifiable time when rights, interests, and liabilities become fixed is when a court enters judgment.").

App'x 587, 592 (6th Cir. 2011) (citing *Atl. Richfield Co. v. Monarch Leasing Co.,* 84 F.3d 204, 205 (6th Cir. 1996)).

Thus, this Court must apply Tennessee law.[5]

**II. Tennessee Statute of Limitations**

Regarding the statute of limitations for legal malpractice actions, the Tennessee Supreme Court has stated the following:

> The statute of limitations for legal malpractice is one year from the time the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(2). When the cause of action accrues is determined by applying the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Shadrick v. Coker,* 963 S.W.2d 726, 733 (Tenn. 1998); *Stanbury v. Bacardi,* 953 S.W.2d 671, 677 (Tenn. 1997).
>
> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage — an actual injury — as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. *Carvell v. Bottoms,* 900 S.W.2d 23, 28-30 (Tenn. 1995).

*John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998).

---

[5]The Defendants further assert that the Tennessee Borrowing Statute, Tenn. Code Ann. § 28-1-112, should be applied to this case, and this Court should find that Alabama law applies on that basis. *See* Doc. 13 at 17-19. However, as will be established by further analysis, use of the Tennessee Borrowing Statute is unnecessary because Plaintiffs' malpractice claim is barred by the relevant Tennessee statute of limitations.

-9-

"An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability." *Id.* (citing *LaMure v. Peters,* 924 P.2d 1379, 1382 (N.M. 1996)).

The Defendants assert that there are four points at which the Court could find that the Plaintiffs suffered a legally cognizable injury: (1) January 21, 2006 – when the statute of limitations expired on Mr. Frazier's wrongful death claim; (2) September/October 2009 – when the Plaintiffs terminated the Defendants' representation; (3) October 11, 2011 – when the Plaintiffs' current attorney, Scott Hendler, sent an email to Defendant Graham inquiring about the applicability of the Mississippi Savings Statute; and (4) October 28, 2011 – when an asbestos defendant filed a motion to dismiss Mr. Frazier's wrongful death claim on statute of limitations grounds. *See* Doc. 13 at pp. 22-23; Doc. 67 at pp. 9-12.

While a legal malpractice action can often present a number of possible dates for accrual of the action[6], this Court need not analyze any dates beyond the September/October 2009 termination of the Defendants' representation and Attorney Hendler's October 11, 2011 email to Defendant Graham.

---

[6]*See* The Honorable William O. Bertelsman & Elizabeth Favret, *"Murky?" Maybe! A Survey of Cases Interpreting Kentucky's Professional Malpractice Statute of Limitations,* 38 N. KY. L. REV. 333, 337 (2011).

### a. Termination of Defendants' Representation

In *Riddle v. Carlton*, the plaintiff hired the defendant attorney in February 2005 to represent her in a worker's compensation claim. No. W2011-02145-COA-R3CV, 2012 WL 1948870, at *1 (Tenn. Ct. App. May 31, 2012). The plaintiff terminated the defendant attorney on January 22, 2009 because he failed to keep the plaintiff informed about the status of her case. *Id*. Thereafter, she filed an ethics complaint against him on March 9, 2009, and it was dismissed on November 9, 2009. *Id*.

The plaintiff hired new counsel on March 10, 2010, but she voluntarily dismissed her worker's compensation claim on July 23, 2010. *Id*. Subsequently, the plaintiff filed a malpractice action against the defendant attorney on March 4, 2011. *Id*.

The *Riddle* Court held that the plaintiff's legal malpractice claim accrued when she terminated the defendant's representation and filed an ethics complaint against him. *Id*. at *3. Acknowledging that the plaintiff might not have been aware of her specific malpractice allegations at that time, the Court stated that, "[S]uch knowledge was not necessary in order to trigger the statute of limitations." *Id*.

Here, the Plaintiffs terminated the Defendants' representation in September and October of 2009. *See* Doc. 12-1, Ex. 1; Doc. 12-2, Ex. A. While the record does not establish that the Plaintiffs were aware of their specific malpractice

allegations at that time, "such knowledge [is] not necessary in order to trigger the statute of limitations." *Riddle*, 2012 WL 1948870 at *3; *see also Kohl*, 977 S.W.2d at 533 ("[T]here is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard.").[7] It is sufficient that the Plaintiffs were so dissatisfied with the Defendants' representation that they felt compelled to terminate that representation and employ different counsel.

Addressing the legal injury component, the Plaintiffs assert that no legal injury occurred as a result of terminating the Defendants and obtaining new counsel because new counsel represented the Plaintiffs on a contingency fee basis in the underlying asbestos disease action. *See* Doc. 68 at pp. 15-18.

However, in *Chambers v. Dillow*, the Tennessee Supreme Court found that even though the plaintiff could not ascertain the full extent of his damages, the fact that the plaintiff had suffered a delay in the progress of his case, he was liable for court costs for his dismissed lawsuit, and he had lost the interest on the use of an anticipated money recovery were sufficient injuries to trigger the statute of limitations. 713 S.W.2d 896, 898-99 (Tenn. 1986).

---

[7]Interestingly, the Plaintiffs rely heavily on the *Kohl* decision. *See* Doc. 68 at pp. 6-7. While some dicta from the *Kohl* decision may be construed to support the Plaintiffs' position, the holding in *Kohl* does not.

Here, the Plaintiffs terminated the Defendants' representation in September and October of 2009 and attorney Hendler formally appeared as the Plaintiffs' counsel in the asbestos litigation in December 2009. *See* Doc. 12-1, Ex. 1; Doc. 12-2, Ex. A; Doc. 12-5.

Despite the Plaintiffs' assertions, the injuries and inconvenience associated with terminating counsel and hiring new counsel are sufficient to constitute a legally cognizable injury under Tennessee law. *See Chambers*, 713 S.W.2d at 898-99; *see also Kohl*, 997 S.W.2d at 533 (finding that plaintiffs suffered a legally cognizable injury when their accountant had to respond to IRS inquiry caused by defendant attorney's advice); *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 544 (Tenn. Ct. App. 2012), *appeal denied* (Aug. 16, 2012) (finding that plaintiffs' "actual inconvenience" in having to defend the enforceability of a contract, regardless of whether an actual expense was incurred, was sufficient to find a legally cognizable injury).

Thus, the Plaintiffs' termination of the Defendants in September and October of 2009 satisfies both the knowledge and injury components of the discovery rule. Therefore, the Plaintiffs' complaint in this action filed on October 30, 2012 is barred by the one year statute of limitations set forth in Tenn. Code Ann. § 28–3–104(a)(2).

### b. Attorney Hendler's Email to Defendant Graham

While the Court has already established that the discovery rule was triggered when the Plaintiffs terminated the Defendants' representation, the Court also recognizes that Attorney Hendler's October 11, 2011 letter to Defendant Graham similarly satisfies the discovery rule.

On October 11, 2011, Hendler sent an email to Defendant Graham inquiring about the applicability of the Mississippi Savings Statute in Alabama because the asbestos defendants were raising the statute of limitations issue. *See* Doc. 67-2.

Under Tennessee law, Attorney Hendler's knowledge of this issue is imputed to the Plaintiffs. *See Lufkin v. Conner*, 338 S.W.3d 499, 504 (Tenn. Ct. App. 2010) ("[A] person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial.") (citation and quotation omitted); *Lane-Detman, L.L.C. v. Miller & Martin*, 82 S.W.3d 284, 296 (Tenn. Ct. App. 2002) ("The knowledge of Plaintiffs' counsel is imputed to Plaintiffs under basic agency theory."); *Smith v. Petkoff*, 919 S.W.2d 595, 597 (Tenn. Ct. App. 1995) ("[A] client is implied to have notice of facts transmitted to his attorney in the matter and course of his employment for such client.") (citation and quotation omitted).

Thus, by October 11, 2011, the Plaintiffs knew of the statute of limitations issue created by the Defendants' alleged negligence.

Also, the expense and inconvenience associated with Attorney Hendler researching the applicability of the Mississippi Savings Statute and drafting a correspondence to Defendant Graham is sufficient to satisfy the legally cognizable injury prong of the discovery rule. *See Chambers*, 713 S.W.2d at 898-99; *see also Kohl*, 997 S.W.2d at 533; *Cardiac*, 385 S.W.3d at 544.

Accordingly, the Plaintiffs' legal malpractice action accrued, at the latest, on October 11, 2011 – more than one year prior to filing the complaint in this action.[8]

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

---

[8] While the result in this case would effectively have forced the Plaintiffs to file their malpractice action against the Defendants while simultaneously attempting to prosecute their case before the Alabama State Court, the Tennessee Supreme Court has addressed this problem. *See Carvell*, 900 S.W.2d at 30. In *Carvell*, the Tennessee Supreme Court recognized the difficulty of this position, but it stated that "clients can avoid the discomfort of maintaining inconsistent positions . . . by filing a malpractice action against the attorney and requesting that the trial court stay that action until the underlying proceedings are concluded." *Id.* (citation and internal quotation omitted); *see also Nw. Nat'l Ins. Co. v. Osborne*, 610 F. Supp. 126, 129 (E.D. Ky. 1985), *aff'd*, 787 F.2d 592 (6th Cir. 1986) ("[T]his situation is easily avoided by the client's going to the allegedly negligent attorney and obtaining a waiver or extension of the statute of limitations until such time as it may be seen if the underlying litigation can be favorably concluded.").

Case 3:12-cv-00564-WOB-HBG   Document 71   Filed 07/19/13   Page 15 of 16   PageID #: 1111

**IT IS ORDERED that:**

1. The Defendants' motions to dismiss, or in the alternative motions for summary judgment, (Docs. 24, 36) be, and are hereby, **GRANTED**;

2. The Plaintiffs' motions for leave to file supplemental exhibits (Docs. 53, 60) be, and are hereby, **GRANTED**;

3. The joint motion to dismiss, or in the alternative for summary judgment, by Defendants Beasley, Allen, Crow, Methvin, Portis, & Miles, PLLC; Jackson, Foster, & Richardson; Sidney Jackson; and Kevin Graham (Doc. 12) be, and is hereby, **DENIED AS MOOT**;

4. The Defendants' motion to stay (Doc. 40) be, and is hereby, **DENIED AS MOOT**;

5. A separate judgment shall enter concurrently herewith.

This 19th day of July, 2013.



Signed By:
William O. Bertelsman  WOB
United States District Judge